## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## BATESVILLE DIVISION

MITCHELL D. TECONCHUK                                           PLAINTIFF
ADC #158686

V.                              No. 1:19-CV-00095-JM-JTR

STEVEN RICKETTS, Deputy Warden,
Grimes Unit, ADC, *et al.*                                     DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James Moody. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I.  Introduction

Plaintiff Mitchell D. Teconchuk ("Teconchuk"), formerly a prisoner in the Grimes Unit of the Arkansas Division of Correction ("ADC"), filed this *pro se* § 1983 action on September 26, 2019. *Doc. 1*. He alleges that Defendants Provider Aric Simmons, Director of Nursing Brenda Bridgeman, RN Anne French, and RN JoAnne Boggs provided inadequate medical care for his abdominal pain, which resulted in emergency surgery and hospitalization, in June 2019, for a "hole in [his] stomach/large intestine." *Doc. 1 at 10–15.*

Teconchuk alleges that Sergeant Brandy Elliot, Lieutenant Christopher Stump, Sergeant Peter Amplo, and Major Maurice D. Culcager forced him to stay in restrictive housing for three days instead of getting medical care for him. *Id. at 8, 10–13, 15–16.* He alleges that Sergeant Rodger A. Tims saw him pleading for medical attention in the shower, but ignored him. *Id. at 16.* He alleges that Deputy Warden Steven Ricketts and Warden Gary Mussleman knew about his need for medical care, but failed to take action. *Id. at 6–7.* Finally, Teconchuk alleges that all Defendants (including Sergeant Devin Thorne) retaliated against him and "tr[ied] to cover up their mistakes" by preventing him from completing the grievance procedure. *Id. at 6–16.*

ADC Defendants Amplo, Culcager, Elliot, Mussleman, Rickets, Stump, Thorne, and Tims have filed a Motion for Summary Judgment on the issue of

exhaustion, a Brief in Support, and a Statement of Facts.[1]   *Docs. 31, 32 & 33.* Medical Defendants Boggs, Bridgeman, French, and Simmons have also filed a Motion for Summary Judgment on the issue of exhaustion, a Brief in Support, and a Statement of Facts.   *Docs. 41, 42 & 43.*

Teconchuk has filed his own Statement of Facts (*Doc. 37*), a Response (*Doc. 51*), three Notices (*Docs. 52, 60 & 61*), four "Proof of Evidence" documents (*Docs. 53, 54, 55 & 59*), and a "Final Act." *Doc. 57.*

For the reasons explained below, the separate Motions for Summary Judgment filed by Defendants Amplo, Culcager, Elliot, Mussleman, Rickets, Stump, Thorne, and Tims (*Doc. 31*) and Defendants Boggs, Bridgeman, French, and Simmons (*Doc. 41*) should be granted.

## II. Discussion

### A.    The PLRA's Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies *before* filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other

---

[1] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007). In *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), the Court held that the PLRA's exhaustion requirement is "mandatory." *See also Muhammad v. Mayfield,* 933 F.3d 993, 1000 (8th Cir. 2019).

The PLRA requires inmates to: (1) *fully and properly* exhaust their available administrative remedies *as to each claim* that is later raised in a § 1983 action; and (2) complete the exhaustion process *before* initiating the § 1983 action. *Jones,* 549 U.S. at 211, 219–20, 223–24; *Woodford*, 548 U.S. at 93–95; *Burns v. Eaton,* 752 F.3d 1136, 1141–42 (8th Cir. 2014). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, a prisoner must comply with the exhaustion requirements of the incarcerating facility before he can properly file a § 1983 action.

4

**B.     ADC Procedures Governing the Exhaustion of Administrative Remedies**

The ADC provides a three-step administrative grievance process. ADC Adm. Dir. 19-20 §§ IV(E)–(G) ("AD 19-20").[2] "If no one responds at Steps One and Two—or if the responses at those steps are dissatisfactory—an inmate may appeal to the level of ADC's 'Chief Deputy/Deputy/Assistant Director' at Step Three." *Muhammad*, 933 F.3d at 997–98.

The ADC administrative grievance policy also informs inmates that "only one problem/issue should be stated in the grievance, not multiple problems/issues." AD 19-20 § (IV)(D)(2). "An inmate must use a separate form for each issue." *Id.* If an inmate includes more than one issue in a grievance, the policy clearly states that "[o]nly one issue will be addressed," and any "[a]dditional problems/issues contained in the grievance will not be considered as exhausted." *Id.*

Finally, the ADC grievance policy requires prisoners to "*specifically name each individual involved*," and include a "brief statement that is specific as to the substance of the issue or complaint to include the date, place [and] *personnel involved* or witnesses." *Id.* at §§ IV(C)(4) & (E)(2) (emphasis added). The grievance forms themselves also contain these instructions to ensure that prisoners are aware

---

[2]At the time of the alleged unconstitutional conduct, ADC Adm. Dir. 14-16 was in effect. When Teconchuck filed his grievances, AD 19-20 was the Inmate Grievance Policy in effect. *Doc. 33 at 1–2*. Defendants submitted copies of both AD 14-16 and AD 19-20 with their summary judgment papers. *Docs. 31-1, 31-2*. The grievance process within these two policies is substantially identical.

of them. AD 19-20, Att. 1 ("[B]e specific as to the complaint, date and place, name of personnel involved and how you were affected.").

The ADC's policy cautions that if a prisoner fails to "exhaust their administrative remedies as to all defendants at all levels of the grievance procedure … their lawsuits or claims may be dismissed immediately" under the PLRA. *Id.* at § IV(N); *see also Id*. at § IV(C)(4) & (D)(2) (both advising inmates to fully exhaust a grievance prior to filing a lawsuit).

### C.    Teconchuk's Relevant Grievances

Teconchuk filed three grievances between the date of Defendants' alleged unconstitutional conduct and the date Teconchuk filed this action: GR-19-01067, GR-19-01069, and GR-19-01070.[3] *Doc. 33 at 2; Doc. 31, Ex. 3, 4 5 and 6.* Teconchuk failed to fully and properly exhaust any of these grievances before he filed his Complaint. *Doc. 1; Doc. 41-1 at 41*. Accordingly, he did not his exhaust available administrative remedies related to any of his pending claims against the named Defendants.

---

[3]A grievance list printout shows Teconchuk filed an earlier medical grievance (GR-19-00658) on May 30, 2019, before his emergency surgery. *Doc. 41-3 at 41*. It appears Health Services responded to the grievance and no appeal was taken. *Id*. Defendants did not provide GR-19-00658 with their filings. In his Statement of Facts, Teconchuk does not mention GR-19-00658, or seek to rely on it to establish exhaustion. *Doc. 37*.

### 1.  Grievance GR-19-01067

Teconchuk exhausted grievance GR-19-01067, but did not identify any of the ADC Defendant (Ricketts, Mussleman, Elliot, Stump, Amplo, Culclager, Tims, or Thorne) by name, job title, workstation, schedule, or any other means. *Doc. 31-3 at 2; Doc. 31-4*. Similarly, he also failed to identify any of the Medical Defendants (Boggs, Bridgeman, French, or Simmons). *Id*. Finally, Teconchuk did not complete exhausting GR-19-01067 until well *after* he initiated this action. *Doc. 31-4 at 2–5*. See *Burns,* 752 F.3d at 1141 (42 U.S.C. § 1997e(a) requires an inmate to exhaust prison grievance procedures *before* filing a § 1983 action alleging his constitutional rights were violated).

In grievance GR-19-01067, Teconchuk alleged only that he wrote numerous sick calls and "no one" would help him or respond to his grievances. *Doc. 31-4 at 2-4*. Teconchuk did not name or identify any of the Medical Defendants who are parties to this action in GR-19-01067, and he made no effort to help the Step Two decision maker to divine *who* "no one" might be. *Doc. 31-4 at 2*.[4] After GR-19-01067 was denied, at Step Two, Teconchuk proceeded to Step Three where he completed the exhaustion process on his claim against Moody.

---

[4]The Health Supervisor, who was the Step Two decision maker on the grievance, independently determined, from reviewing Teconchuk's medical records, that he was grieving the conduct of Nurse Practitioner "T. Moody" ("Moody"), who apparently evaluated Teconchuk on September 1, 2019. *Doc. 31-4 at 4*. Teconchuk did not name Moody as a party in this action.

Because he did not name or otherwise identify any of the Defendants in this case in grievance GR-19-01067, Teconchuk cannot use it to establish he exhausted his administrative remedies on any of the claims he is asserting against them in this action.

### 2. Grievances GR-19-01069 and GR-19-01070

Teconchuk apparently filed two Step One Informal Resolutions, which were later designated, at Step Two, as GR-19-01069 and GR-19-01070. At Step Two, however, Teconchuk was required to initiate his formal Step Two grievance using "the same Unit Level Grievance Form . . . that was used for [his] Step One [informal resolution]." *Doc. 31-3 at 2.*[5] Instead of doing so, he attempted to initiate those two grievances by completing and submitting stand-alone Unit Level Grievance Forms at Step Two, in violation of AD 19-20 § IV(F). Thus, both of those grievances were procedurally flawed.

According to Teconchuk, the Step One decision makers did not return to him the Unit Level Grievance Forms he completed to initiate the informal resolutions after they were denied. He claims this forced him to complete and file new Unit Level Grievance Forms with only the grievance section of those forms completed,

---

[5]AD 19-20 § (IV)(F) specifies that an inmate may proceed to Step Two "by filing a formal grievance on the same Unit Level Grievance Form (Attachment I) that was used for Step One." *Doc. 31-2 at 9*. The Unit Level Grievance Form is a one-page form that contains instructions and blank lines to be used for both the informal resolution, the first section of the form, *and* the grievance, the second section of the form. Both the informal resolution and grievance must be submitted on the same one-page form.

and the informal resolution section of the forms left blank. Importantly, Teconchuk does *not* explain why he failed to bring this to the attention of the Step Two decision makers. In filing the new, stand-alone Unit Level Grievance Forms, Teconchuk easily could have explained that he was doing so because the Step One decision makers did not provide him with the original Unit Level Grievance Forms when they denied his Informal Resolutions.

If the Step Two decision makers had been placed on notice of these alleged facts, they would have investigated Teconchuk's allegation and, if it was found to be true, undoubtably excused the procedural defects in GR-19-01069 and GR-19-01070. Teconchuk's decision to raise this excuse only *after* Defendants pointed out that he failed to *properly exhaust* those two grievances in their motion papers casts grave doubt on the plausibility of his conclusory argument and falls far short of creating a genuine issue of disputed fact surrounding his failure to properly exhaust GR-19-01069 and GR-19-01070.

The Health Service Administrator, who was the Step Two decision maker, denied GR-19-01069 and GR-19-01070, *on procedural grounds*, because Teconchuk failed to attach copies of his respective informal resolutions to those grievances. *Doc. 31-5 at 3*. As a result, those grievances were *not* properly exhausted and Teconchuk did not obtain a decision *on the merits* of the grieved matter.

9

Contrary to Teconchuk's suggestion, his apparent failure to understand and follow the ADC's exhaustion procedure does not mean the exhaustion process was "unavailable" to him. *See Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000) (If administrative remedies are available, the prisoner must exhaust them, and a prisoner's erroneous beliefs about the availability of administrative remedies do not provide an exception to exhaustion).

Finally, GR-19-01069 and GR-19-01070 fail to name or otherwise identify any of the Defendants in this action or grieve anything that appears to be related to the claims Teconchuk is now asserting against them. Thus, even if the Step Two decision maker had reached the merits of these grievances and Teconchuk had then properly completed his Step Three appeals of these grievances, he still would not be able to rely on either of those grievances to demonstrate that he had exhausted his administrative remedies on *any* of the claims he is now asserting against *any* of the Defendants in this action.

Teconchuk also seeks to excuse his failure to exhaust by making the conclusory argument that "inmates are instructed to put in a sick call not the grievance procedure." *Doc. 51 at 1*. This vague assertion is flatly contradicted by Teconchuk's own actions, several months after his surgery, in accessing and utilizing the ADC's grievance procedure, as he knew he was required to do, to exhaust his administrative remedies. It also does not address why Teconchuk failed

10

to identify any named Defendant in those grievances, or articulate any claim against them.

Finally, Teconchuk admits that he "did attempt to file a grievance when back from the hospital but the trauma of [hospitalization] and [his] mental health and learning to eat again (certain foods) was overbearing." *Id*. He goes on to acknowledge that he found "no merit in the grievance procedure" because the damage was already done and his "stomach was already busted." *Id*. Teconchuk's subjective belief that the ADC's grievance process was futile does *not* excuse him from the requirement that he must fully and properly exhaust his administrative remedies. See *Chelette*, 229 F.3d at 688 (8th Cir. 2000) ("Section 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him.").

### III.   Conclusion

Teconchuk failed to fully and properly exhaust his administrative remedies against any of the Defendants, whom he neither named nor asserted any claims against in his grievances. Accordingly, Teconchuk's claims against Defendants Amplo, Culcager, Elliot, Mussleman, Rickets, Stump, Thorne, Tims, Boggs, Bridgeman, French, and Simmons should be dismissed, without prejudice.

IT IS THEREFORE RECOMMENDED THAT Defendants' Motions for Summary Judgment (*Doc. 31 & 41*) be GRANTED, and that this lawsuit be

DISMISSED, without prejudice. All other pending motions should be DENIED as moot.

Dated this 18th day of August, 2021.

_____
UNITED STATES MAGISTRATE JUDGE